**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
United States Courthouse
402 East State Street, Room 255
Trenton, New Jersey   08608

**Hon. Christine M. Gravelle**  609-858-9370
United States Bankruptcy Judge  Fax   609-989-0431

## LETTER DECISION

July 15, 2016

**Sent via ECF & email**

Edward Hanratty, Esq.
Edward Hanratty
1 West Main St.
Freehold, NJ 07728                            thanratty@tomeslawfirm.com

Jeanette F. Frankenberg, Esq.
Stern Lavinthal & Frankenberg
105 Eisenhower Parkway
Suite 302
Roseland, NJ 07068                            cmecf@sternlav.com

Albert Russo
Standing Chapter 13 Trustee
CN 4853
Trenton, NJ 08650-4853                        docs@russotrustee.com

Dear Litigants:

      Re:    **In re Corvisiero; Case No. 12-31117-CMG**
            **Motion for Sanctions against Nationstar**

### I.        INTRODUCTION

Debtors Louis and Marisa Corvisiero, through their attorney Edward Hanratty, Esq., filed a motion for sanctions against Nationstar Mortgage LLC ("Nationstar").  At issue is whether the alleged delay of a loan modification with Nationstar through the Loss Mitigation Program ("LMP") should result in sanctions against Nationstar.  Debtors allege Nationstar lacked good faith in not moving forward with Debtors' application despite Debtors' multiple submission of financial documents.  Debtors' ask that this Court enter an order compelling Nationstar to pay

the fees and costs incurred by the Debtors in pursuit of the loan modification and the current motion, and to award damages to the debtor for distress caused by Nationstar's failure to approve Debtors' application.

For the reasons stated below, this Court denies Debtors' motion for sanctions.

## II.     **JURISDICTION AND VENUE**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## III.    **PROCEDURAL HISTORY AND RELEVANT FACTS**

Debtors filed their original motion requesting Loss Mitigation for their first mortgage held by Bank of America in May 2013, nine months after they filed their Chapter 13 petition. That motion was unopposed and the Court approved loss mitigation for a period of 90 days. The Court's docket saw no activity during the initial loss mitigation period relative to a loan modification and the loss mitigation period expired pursuant to the terms of the Order allowing it. Thereafter, in September 2013, Bank of America transferred the loan to Nationstar. Two and ½ months later, debtors applied for an extension of the loss mitigation period, even though the period had already expired. The application for extension did not specify the length of the period sought and, absent opposition from Nationstar, the Court granted a short extension.

Four months after the expiration of the first extension, Debtors again applied for an extension of the loss mitigation period stating, incorrectly, that the loss mitigation period was set to expire on April 11, 2014. Receiving no opposition from Nationstar, the Court again extended the loss mitigation period, this time for three months. This second extension also expired without modification of the loan.

Nine months after expiration of the second extended period, Debtors filed a new request for loss mitigation, which the Court granted, absent objection, to August 2014. Again, the

debtors received no loan modification yet failed to file a request for extension of the loss mitigation period until another eight months passed.  The docket shows that Debtors were able to modify their confirmed plan during this time to allow for additional time to March 3, 2015 to obtain a loan modification, but that date also passed without accomplishing that goal.

A month after confirmation of the modified plan, the Debtors filed a new Notice of Request for Loss Mitigation, essentially, their fourth attempt to modify the loan through this Court's program.  Again, absent response from Nationstar, the Court granted the Debtors' request allowing time into August 2015 to obtain a modification.

In response to Debtors' fifth request for an extension the Court extended the period to November 23, 2015. The sixth and final extension allowed the Debtors through December 8, 2015 to obtain a loan modification.  Throughout this process it is evident that Debtors allowed the Loss Mitigation period to lapse several times for prolonged periods.  Debtors gave no explanation for these lapses.

At Debtors' request, the Court held a status conference on November 10, 2015 to discuss the status of the loan modification.

Two attorneys appeared at the status conference on behalf of Nationstar.  Apparently, one had been retained to represent Nationstar in connection with the attempts at loan modification, and the other to obtain stay relief so Nationstar could proceed with a foreclosure.  At the conference, which was held on the record, neither attorney was aware of the other's retention.

In fact, the attorney retained to get stay relief had actually filed a motion for relief from stay on the day of the status conference.  In its request for stay relief, Nationstar alleged that, as of October 20, 2015, the total post-petition arrearage on the Debtors' mortgage was $37,520.62.  This, despite the fact that the Debtors had been making adequate protection payments in accordance with §7(B) of the LMP.  The Court subsequently denied stay relief.

At the status conference, the parties agreed to a schedule whereby Nationstar was to provide the Debtors with a complete list of missing documents and a list of documents already in its file, along with the dates of those documents.  The Debtors were given a few weeks to submit a complete loss mitigation package, and Nationstar would promptly review the package and

respond to the debtors' request for a loan modification. On November 13, 2015, the Court entered an Order memorializing the agreement and scheduling a follow-up conference for December 8th (the "Interim Order"). On December 8th, the parties informed the Court that an Order would be submitted, but the docket reflects that none was submitted.

In March 2016, the Debtors modified their plan for the third time, to extend the time within which they would obtain a loan modification. Two weeks later, they filed the motion for sanctions that is the subject of this decision (the "Motion").

### IV.    APPLICABLE LAW

The Court's ability to impose sanctions is derived from 11 U.S.C. §105 and the Court's general order governing the Loss Mitigation Program and Procedures adopted by general order dated August 1, 2011, as amended. Specifically, §7 states that parties that do not participate in good faith in the loss mitigation process may be subject to sanctions. Civil contempt "serves to coerce a defendant into complying with a court's orders or to compensate the complainant for losses sustained as a result of the defendant's non-compliance." In re Davitch, 336 B.R. 241, 251 (Bankr. W.D. Pa. 2006). To hold a party in civil contempt, the following must be demonstrated by clear and convincing evidence: (1) a valid court order exists; (2) the party had knowledge of the order; and (3) the defendant disobeyed the order." See id., citing Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3d Cir. 1995). Both parties agree that the first two elements of civil contempt are met. However, the third element is disputed.

In In re Furino, this Court imposed sanctions on Nationstar under 11 U.S.C. § 105 because of Nationstar's "lack of responsiveness and failure to appear at status conferences" thereby disregarding its duty to participate in the LMP in good faith. *See* In re Furino, No. 12-29799, 2014 Bankr. LEXIS 810, at *11 (U.S. Bankr. D.N.J. Feb. 26, 2014). In that case, Nationstar failed to send a personal representative with settlement authority to the initial status conference as required by the LMP, failed to send a personal representative to a status conferences thereafter on multiple occasions and ignored this Court's direct order to appear at a settlement conference. The Court held that while "participation in the LMP does not require loan modification; it requires the parties to work toward an acceptable resolution whenever possible so as to keep debtors in their homes." In re Furino, 2014 Bankr. LEXIS 810, at *7.

## V. ANALYSIS

In the Motion, Debtors claim they have been trying to obtain a loan modification since 2010, more than two years before they filed their Chapter 13 petition. But, the docket in this case shows that they failed to take advantage of the LMP until May 2013, nine months after they filed their petition. The Motion itself discusses only the Debtors' efforts to obtain a loan modification beginning in January 2015. Exhibit H to the Motion is labeled "Statement re Modification." While it consists of five pages of single-spaced typewritten text and appears to be a narrative of Marisa Corvisiero's interactions with Nationstar, it begins in 2003, contains hearsay, is not certified, is unsigned, is not admissible evidence, and will not be considered by this Court. Therefore, only events known to the Court, those being the facts brought to its attention beginning with the status conference in November 2015, are relevant to this decision.

According to the loss mitigation history from the DMM portal, attached as Exhibit A to the Certification of Kristi Berry submitted in support of Nationstar's opposition to the Motion, a Nationstar representative notified Debtors' counsel of missing documents the day after it received Debtors' application for Loss Mitigation on January 6, 2015.[1] When Debtors' counsel took no action, Nationstar notified counsel of the missing documents three more times before Nationstar issued its denial letter because it did not receive a response from Debtors.

More than two months passed before Debtors received another loss mitigation order dated May 8, 2015. Nationstar reopened the Debtors' file and sent an email to Debtors' counsel requesting a fully updated modification application. The new modification package was not sent to Nationstar until June 9th. On June 29, Nationstar advised Debtors' counsel that the application was incomplete and additional documents would need to be submitted before processing could begin. Follow up requests were then sent on July 1 and 7, however updated documents were not received until July 30. This back and forth continued, with response times varying between Nationstar and Debtors, until Nationstar finally placed the request for loan modification into review on January 22, 2016. It is important to note that Nationstar cooperated in extending the LMP during this process.

---

[1] Debtors' counsel also submitted a "DMM Portal printout," but the printout provided very little substantive information and the Court did not find it useful.

But, as is common in these situations, by the time the loan went into review many of the documents contained in Debtors' application had expired, as documents are only valid for a 90 period. Consequently, Debtors' counsel was notified on January 26, 2016 that there were expired documents that needed updating. On March 11, the required documents were uploaded to the DMM portal. Subsequently, the loan was again put into review, however, due to other documents in the loan application being older than 90 days, the review could not be completed.

Debtors' counsel filed the Motion on March 18, 2016. In response, the Court entered a scheduling order for submission of documents by Debtors that required Nationstar to complete underwriting by May 20, 2016. The scheduling order set a hearing on the motion for sanctions on June 1. At the hearing, Debtors' counsel informed the Court that Nationstar had offered his clients a trial period for a loan modification. Nevertheless, he pressed the Motion, asserting that Nationstar prolonged the processing of the Debtors' application and did not act in good faith.

The fact that Nationstar approved a trial modification, thereby completing its underwriting process in accordance with this Court's scheduling order, is solid ground for denial of the Motion. Debtors failed to prove that Nationstar acted in bad faith. There is no clear evidence that Nationstar intentionally delayed the processing of the Debtors' application in order to avoid further discussions about a loan modification. This case is easily distinguished from the <u>Furino</u> case. Here, Nationstar participated in all hearings and status conferences and actively engaged with the Debtors using the DMM Portal. It cooperated with the Debtors in extending time to conduct the loss mitigation process.

Fault for the prolonged nature of this Loss Mitigation order does not rest solely with Nationstar. Ultimately, the drawn out nature of this case is the fault of both parties and appears to be the very nature of the unwieldy beast that is the loan modification process. Debtors have not proven, by clear and convincing evidence that Nationstar disregarded this Court's order or did not act in good faith.

Finally, while it is has been found that Nationstar's stay relief motion was without merit, there is no indication that the motion was filed in bad faith or to derail the Debtors' effort at loan modification.

Accordingly, sanctions will not be imposed on Nationstar.

**VI.** **CONCLUSION**

For the reasons stated above, Debtors' motion is DENIED.

Very truly yours,

/s/Christine M. Gravelle
United States Bankruptcy Judge

CMG/rtp
Docket